FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 16 2010

JAMES W. McCORMACK, CLERK
By: _____
                        DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

This case assigned to District Judge _Moody_
and to Magistrate Judge _Jones_

UNITED STATES OF AMERICA,
*ex rel.*, RYAN LADNER                                              PLAINTIFF

V.                          CIVIL ACTION NO. 4·10-CV-0170

ALLEGIANCE HEALTH MANAGEMENT;
ROCK BORDELON; DICK MERCK; DON CAMERON;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-HATTIESBURG;
WESLEY MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-AMORY;
GILMORE MEMORIAL REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-BRANDON;
CROSSGATES RIVER OAKS HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-CLARKSDALE;
NORTHWEST MISSISSIPPI REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-CLEVELAND;
BOLIVAR MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-GREENWOOD;
GREENWOOD LEFLORE HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-GRENADA;
GRENADA LAKE MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-NATCHEZ;
NATCHEZ COMMUNITY HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-RIDGELAND;
CENTRAL MISSISSIPPI MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-SENATOBIA;
NORTH OAK REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-JASPER;
WALKER BAPTIST MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-DAHLONEGA;
CHESTATEE REGIONAL HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-STATESBORO;
EAST GEORGIA REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-STATESVILLE;
DAVIS REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-LAKE NORMAN;
LAKE NORMAN REGIONAL MEDICAL CENTER;



INSPIRATIONS OUTPATIENT COUNSELING CENTER-LEHIGH ACRES;
LEHIGH REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-MILTON;
SANTA ROSA MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-DURANT;
MEDICAL CENTER OF SOUTHEASTERN OKLAHOMA;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-MCALESTER;
MCALESTER REGIONAL HEALTH CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-DARDANELLE;
RIVER VALLEY MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-EUREKA SPRINGS;
EUREKA SPRINGS HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-HOT SPRINGS;
HEALTH PARK HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-LITTLE ROCK;
SOUTHWEST REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-JACKSONVILLE;
NORTH METRO MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-VAN BUREN;
SUMMIT MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-MONTICELLO;
DREW MEMORIAL HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-TEXARKANA;
WADLEY REGIONAL MEDICAL CENTER;
VISTA HEALTH;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-BEAUMONT;
CHRISTUS ST. ELIZABETH HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-KILGORE;
ALLEGIANCE SPECIALTY HOSPITAL OF KILGORE;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-LUBBOCK;
ALLEGIANCE HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-MIDLAND;
ALLEGIANCE HEALTH CENTER OF MIDLAND;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-PLAINVIEW;
MHMR COVENANT HOSPITAL;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-TYLER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-GAINESVILLE;
NORTH TEXAS MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-MANY;
SABINE MEDICAL CENTER;

INSPIRATIONS OUTPATIENT COUNSELING CENTER-MINDEN;
MINDEN MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-WEST MONROE;
GLENWOOD REGIONAL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-SPRINGHILL;
SPRINGHILL MEDICAL CENTER;
INSPIRATIONS OUTPATIENT COUNSELING CENTER-RUSTON;
HEALTHSOUTH SPECIALTY HOSPITAL OF NORTH LOUISIANA;
HEALTH MANAGEMENT ASSOCIATES, INC.;
COMMUNITY HEALTH SYSTEMS, INC.;
QUORUM HEALTH RESOURCES;
LIFEPOINT HOSPITALS, INC.                                    DEFENDANTS

**FILED UNDER SEAL**

## COMPLAINT
(JURY TRIAL REQUESTED)

*Qui tam* relator, Ryan Ladner, by his undersigned attorneys, hereby alleges as follows:

1.    This is a civil action brought on behalf of the United States of America against

the defendants named herein to recover damages and civil penalties under the False

Claims Act, 31 U.S.C. §§ 3729-3732, as amended by the False Claims Act Amendments

of 1986 and the  Fraud Enforcement and Recovery Act of 2009.  Relator Ryan Ladner

("Ladner"), acting on behalf of the United States, brings this civil action under the *qui*

*tam* provisions of the False Claims Act.

### Venue and Jurisdiction

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and

31 U.S.C. §§ 3730(b) and 3732(a).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and © and 31

U.S.C. § 3732(a).  Defendants, or certain of them, were doing business in this district at all times material to this action, and the claims set forth in this Complaint arose, at least in part, in this district.

### The Parties

4.  *Qui tam* relator Ladner is a United States citizen and a resident of the State of Mississippi.  Ladner was employed by defendants Allegiance/Wesley Medical Center Inspirations from July 2007 until January 2008 as the Program Director for Allegiance's outpatient mental health center at Wesley Medical Center in Hattiesburg, Mississippi.

5.  Defendant Allegiance Health Management is a healthcare management company with its headquarters in Shreveport, Louisiana.  Allegiance owns and/or operates over 40 hospital-based outpatient mental health clinics in Arkansas, Louisiana, Texas, Oklahoma, Mississippi, Alabama, Georgia, Florida, and North Carolina. Allegiance Health Management owns and/or manages Defendant hospitals Greenwood Leflore Hospital, River Valley Medical Center, North Metro Medical Center, Eureka Springs Hospital, Sabine Medical Center, Allegiance Specialty Hospital of Kilgore, and Allegiance Health Center of Midland.

6.  Defendant Rock Bordelon is a resident of Louisiana and is the President and Chief Executive Officer of defendant Allegiance Health Management.

7.  Defendant Dick Merck is a resident of Louisiana and is the Executive Vice President of defendant Allegiance Health Management.

4

8. Defendant Don Cameron is a resident of Louisiana and is the Chief Operating Officer of defendant Allegiance Health Management.

9. Defendant Inspirations Outpatient Counseling Center-Hattiesburg is owned and operated by defendant Allegiance Health Management and is located in Hattiesburg, Mississippi. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Hattiesburg were submitted by Wesley Medical Center under the provider number of Wesley Medical Center. Inspirations Outpatient Counseling Center-Hattiesburg is located off-site from Wesley Medical Center and is not a department of Wesley Medical Center.

10. Defendant Wesley Medical Center is a hospital located in Hattiesburg, Mississippi.

11. Defendant Inspirations Outpatient Counseling Center-Amory is owned and operated by defendant Allegiance Health Management and is located in Amory, Mississippi. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Amory were submitted by Gilmore Memorial Regional Medical Center under the provider number of Gilmore Memorial Regional Medical Center. Inspirations Outpatient Counseling Center-Amory is located off-site from Gilmore Memorial Regional Medical Center and is not a department of Gilmore Memorial Regional Medical Center.

12. Defendant Gilmore Memorial Regional Medical Center is a hospital located in

Amory, Mississippi.

13.  Defendant Inspirations Outpatient Counseling Center-Brandon is owned and operated by defendant Allegiance Health Management and is located in Brandon, Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Brandon were submitted by Crossgates River Oaks Hospital under the provider number of Crossgates River Oaks Hospital. Inspirations Outpatient Counseling Center-Brandon is located off-site from Crossgates River Oaks Hospital and is not a department of Crossgates River Oaks Hospital.

14.  Defendant Crossgates River Oaks Hospital is a hospital located in Brandon, Mississippi.

15.  Defendant Inspirations Outpatient Counseling Center-Clarksdale is owned and operated by defendant Allegiance Health Management and is located in Clarksdale, Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Clarksdale were submitted by Northwest Mississippi Regional Medical Center under the provider number of Northwest Mississippi Regional Medical Center.  Inspirations Outpatient Counseling Center-Clarksdale is located off-site from Northwest Mississippi Regional Medical Center and is not a department of Northwest Mississippi Regional Medical Center.

16.  Defendant Northwest Mississippi Regional Medical Center is a hospital located in Clarksdale, Mississippi.

6

17.  Defendant Inspirations Outpatient Counseling Center-Cleveland is owned and operated by defendant Allegiance Health Management and is located in Cleveland, Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Cleveland were submitted by Bolivar Medical Center under the provider number of Bolivar Medical Center.  Inspirations Outpatient Counseling Center-Cleveland is located off-site from Bolivar Medical Center and is not a department of Bolivar Medical Center.

18.  Defendant Bolivar Medical Center is a hospital located in Cleveland, Mississippi.

19.  Defendant Inspirations Outpatient Counseling Center-Greenwood is owned and operated by defendant Allegiance Health Management and is located in Greenwood, Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Greenwood were submitted by Greenwood Leflore Hospital under the provider number of Greenwood Leflore Hospital.  Inspirations Outpatient Counseling Center-Greenwood is located off-site from Greenwood Leflore Hospital and is not a department of Greenwood Leflore Hospital.

20.  Defendant Greenwood Leflore Hospital is a hospital located in Greenwood, Mississippi.

21.  Defendant Inspirations Outpatient Counseling Center-Grenada is owned and operated by defendant Allegiance Health Management and is located in Grenada,

Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Grenada were submitted by Grenada Lake Medical Center under the provider number of Grenada Lake Medical Center.  Inspirations Outpatient Counseling Center-Grenada is located off-site from Grenada Lake Medical Center and is not a department of Grenada Lake Medical Center.

22.  Defendant Grenada Lake Medical Center is a hospital located in Grenada, Mississippi.

23.  Defendant Inspirations Outpatient Counseling Center-Natchez is owned and operated by defendant Allegiance Health Management and is located in Natchez, Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Natchez were submitted by Natchez Community Hospital under the provider number of Natchez Community Hospital. Inspirations Outpatient Counseling Center-Natchez is located off-site from Natchez Community Hospital and is not a department of Natchez Community Hospital.

24.  Defendant Natchez Community Hospital is a hospital located in Natchez, Mississippi.

25.  Defendant Inspirations Outpatient Counseling Center-Ridgeland is owned and operated by defendant Allegiance Health Management and is located in Ridgeland, Mississippi.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Ridgeland were submitted by Central

8

Mississippi Medical Center under the provider number of Central Mississippi Medical Center. Inspirations Outpatient Counseling Center-Ridgeland is located off-site from Central Mississippi Medical Center and is not a department of Central Mississippi Medical Center.

26. Defendant Central Mississippi Medical Center is a hospital located in Jackson, Mississippi.

27. Defendant Inspirations Outpatient Counseling Center-Senatobia is owned and operated by defendant Allegiance Health Management and is located in Senatobia, Mississippi. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Senatobia were submitted by North Oak Regional Medical Center under the provider number of North Oak Regional Medical Center. Inspirations Outpatient Counseling Center-Senatobia is located off-site from North Oak Regional Medical Center and is not a department of North Oak Regional Medical Center.

28. Defendant North Oak Regional Medical Center is a hospital located in Senatobia, Mississippi.

29. Defendant Inspirations Outpatient Counseling Center-Jasper is owned and operated by defendant Allegiance Health Management and is located in Jasper, Alabama. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Jasper were submitted by Walker Baptist Medical Center

under the provider number of Walker Baptist Medical Center.  Inspirations Outpatient

Counseling Center-Jasper is located off-site from Walker Baptist Medical Center and is

not a department of Walker Baptist Medical Center.

30.  Defendant Walker Baptist Medical Center is a hospital located in Jasper,

Alabama.

31.  Defendant Inspirations Outpatient Counseling Center-Dahlonega is owned and

operated by defendant Allegiance Health Management and is located in Dahlonega,

Georgia.  All claims submitted to Medicare and/or Medicaid for "services" provided at

Inspirations Outpatient Counseling Center-Dahlonega were submitted by Chestatee

Regional Hospital under the provider number of Chestatee Regional Hospital.

Inspirations Outpatient Counseling Center-Dahlonega is located off-site from Chestatee

Regional Hospital and is not a department of Chestatee Regional Hospital.

32.  Defendant Chestatee Regional Hospital is a hospital located in Dahlonega,

Georgia.

33.  Defendant Inspirations Outpatient Counseling Center-Statesboro is owned and

operated by defendant Allegiance Health Management and is located in Statesboro,

Georgia.  All claims submitted to Medicare and/or Medicaid for "services" provided at

Inspirations Outpatient Counseling Center-Statesboro were submitted by East Georgia

Regional Medical Center under the provider number of East Georgia Regional Medical

Center.  Inspirations Outpatient Counseling Center-Statesboro is located off-site from

East Georgia Regional Medical Center and is not a department of East Georgia Regional Medical Center.

34. Defendant East Georgia Regional Medical Center is a hospital located in Statesboro, Georgia.

35. Defendant Inspirations Outpatient Counseling Center-Statesville is owned and operated by defendant Allegiance Health Management and is located in Statesville, North Carolina. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Statesville were submitted by Davis Regional Medical Center under the provider number of Davis Regional Medical Center. Inspirations Outpatient Counseling Center-Statesville is located off-site from Davis Regional Medical Center and is not a department of Davis Regional Medical Center.

36. Defendant Davis Regional Medical Center is a hospital located in Statesville, North Carolina.

37. Defendant Inspirations Outpatient Counseling Center-Lake Norman is owned and operated by defendant Allegiance Health Management and is located in Mooresville, North Carolina. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Lake Norman were submitted by Lake Norman Regional Medical Center under the provider number of Lake Norman Regional Medical Center. Inspirations Outpatient Counseling Center-Lake Norman is located off-site from Lake Norman Regional Medical Center and is not a department of

Lake Norman Regional Medical Center.

38. Defendant Lake Norman Regional Medical Center is a hospital located in Mooresville, North Carolina.

39. Defendant Inspirations Outpatient Counseling Center-Lehigh Acres is owned and operated by defendant Allegiance Health Management and is located in Lehigh Acres, Florida. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Lehigh Acres were submitted by Lehigh Regional Medical Center under the provider number of Lehigh Regional Medical Center. Inspirations Outpatient Counseling Center-Lehigh Acres is located off-site from Lehigh Regional Medical Center and is not a department of Lehigh Regional Medical Center.

40. Defendant Lehigh Regional Medical Center is a hospital located in Lehigh Acres, Florida.

41. Defendant Inspirations Outpatient Counseling Center-Milton is owned and operated by defendant Allegiance Health Management and is located in Milton, Florida. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Milton were submitted by Santa Rosa Medical Center under the provider number of Santa Rosa Medical Center. Inspirations Outpatient Counseling Center-Milton is located off-site from Santa Rosa Medical Center and is not a department of Santa Rosa Medical Center.

42.  Defendant Santa Rosa Medical Center is a hospital located in Milton, Florida.

43.  Defendant Inspirations Outpatient Counseling Center-Durant is owned and operated by defendant Allegiance Health Management and is located in Durant, Oklahoma.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Durant were submitted by Medical Center of Southeastern Oklahoma under the provider number of Medical Center of Southeastern Oklahoma.  Inspirations Outpatient Counseling Center-Durant is located off-site from Medical Center of Southeastern Oklahoma and is not a department of Medical Center of Southeastern Oklahoma.

44.  Defendant Medical Center of Southeastern Oklahoma is a hospital located in Durant, Oklahoma.

45.  Defendant Inspirations Outpatient Counseling Center-McAlester is owned and operated by defendant Allegiance Health Management and is located in McAlester, Oklahoma.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-McAlester were submitted by McAlester Regional Health Center under the provider number of McAlester Regional Health Center.  Inspirations Outpatient Counseling Center-McAlester is located off-site from McAlester Regional Health Center and is not a department of McAlester Regional Health Center.

46.  Defendant McAlester Regional Health Center is a hospital located in McAlester, Oklahoma.

47.  Defendant Inspirations Outpatient Counseling Center-Dardanelle is owned and operated by defendant Allegiance Health Management and is located in Dardanelle, Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Dardanelle were submitted by River Valley Medical Center under the provider number of River Valley Medical Center.  Inspirations Outpatient Counseling Center-Dardanelle is located off-site from River Valley Medical Center and is not a department of River Valley Medical Center.

48.  Defendant River Valley Medical Center is a hospital located in Dardanelle, Arkansas.

49.  Defendant Inspirations Outpatient Counseling Center-Eureka Springs is owned and operated by defendant Allegiance Health Management and is located in Eureka Springs, Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Eureka Springs were submitted by Eureka Springs Hospital under the provider number of Eureka Springs Hospital.  Inspirations Outpatient Counseling Center-Eureka Springs is located off-site from Eureka Springs Hospital and is not a department of Eureka Springs Hospital.

50.  Defendant Eureka Springs Hospital is a hospital located in Eureka Springs, Arkansas.

51.  Defendant Inspirations Outpatient Counseling Center-Hot Springs is owned and operated by defendant Allegiance Health Management and is located in Hot Springs,

Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Hot Springs were submitted by Health Park Hospital under the provider number of Health Park Hospital.  Inspirations Outpatient Counseling Center-Hot Springs is located off-site from Health Park Hospital and is not a department of Health Park Hospital.

52.  Defendant Health Park Hospital is a hospital located in Hot Springs, Arkansas.

53.  Defendant Inspirations Outpatient Counseling Center-Little Rock is owned and operated by defendant Allegiance Health Management and is located in Little Rock, Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Little Rock were submitted by Southwest Regional Medical Center under the provider number of Southwest Regional Medical Center.  Inspirations Outpatient Counseling Center-Little Rock is located off-site from Southwest Regional Medical Center and is not a department of Southwest Regional Medical Center.

54.  Defendant Southwest Regional Medical Center is a hospital located in Little Rock, Arkansas.

55.  Defendant Inspirations Outpatient Counseling Center-Jacksonville is owned and operated by defendant Allegiance Health Management and is located in Jacksonville, Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Jacksonville were submitted by North Metro

Medical Center under the provider number of North Metro Medical Center.  Inspirations

Outpatient Counseling Center-Jacksonville is located off-site from North Metro Medical

Center and is not a department of North Metro Medical Center.

56.  Defendant North Metro Medical Center is a hospital located in Jacksonville,

Arkansas.

57.  Defendant Inspirations Outpatient Counseling Center-Van Buren is owned and

operated by defendant Allegiance Health Management and is located in Van Buren,

Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at

Inspirations Outpatient Counseling Center-Van Buren were submitted by Summit

Medical Center under the provider number of Summit Medical Center.  Inspirations

Outpatient Counseling Center-Van Buren is located off-site from Summit Medical Center

and is not a department of Summit Medical Center.

58.  Defendant Summit Medical Center is a hospital located in Van Buren,

Arkansas.

59.  Defendant Inspirations Outpatient Counseling Center-Monticello is owned

and operated by defendant Allegiance Health Management and is located in Monticello,

Arkansas.  All claims submitted to Medicare and/or Medicaid for "services" provided at

Inspirations Outpatient Counseling Center-Monticello were submitted by Drew Memorial

Hospital under the provider number of Drew Memorial Hospital.  Inspirations Outpatient

Counseling Center-Monticello is located off-site from Drew Memorial Hospital and is not

a department of Drew Memorial Hospital.

60. Defendant Drew Memorial Hospital is a hospital located in Monticello, Arkansas.

61. Defendant Inspirations Outpatient Counseling Center-Texarkana is owned and operated by defendant Allegiance Health Management and is located in Texarkana, Arkansas. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Texarkana were submitted by Wadley Regional Medical Center under the provider number of Wadley Regional Medical Center until approximately 2009, then were submitted by Vista Health after approximately 2009. Inspirations Outpatient Counseling Center-Texarkana is located off-site from Wadley Regional Medical Center and Vista Health and is not a department of Wadley Regional Medical Center or Vista Health.

62. Defendant Wadley Regional Medical Center is a hospital located in Texarkana, Texas.

63. Defendant Vista Health is a hospital located in Texarkana, Arkansas.

64. Defendant Inspirations Outpatient Counseling Center-Beaumont is owned and operated by defendant Allegiance Health Management and is located in Beaumont, Texas. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Beaumont were submitted by Christus St. Elizabeth Hospital under the provider number of Christus St. Elizabeth Hospital. Inspirations

Outpatient Counseling Center-Beaumont is located off-site from Christus St. Elizabeth

Hospital and is not a department of Christus St. Elizabeth Hospital.

65.   Defendant Christus St. Elizabeth Hospital is a hospital located in Beaumont,

Texas.

66.   Defendant Inspirations Outpatient Counseling Center-Kilgore is owned and

operated by defendant Allegiance Health Management and is located in Kilgore, Texas.

All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations

Outpatient Counseling Center-Kilgore were submitted by Allegiance Specialty Hospital

of Kilgore under the provider number of Allegiance Specialty Hospital of Kilgore.

Inspirations Outpatient Counseling Center-Kilgore is located off-site from Allegiance

Specialty Hospital of Kilgore and is not a department of Allegiance Specialty Hospital of

Kilgore.

67.   Defendant Allegiance Specialty Hospital of Kilgore is a hospital located in

Kilgore, Texas.

68.   Defendant Inspirations Outpatient Counseling Center-Lubbock is owned and

operated by defendant Allegiance Health Management and is located in Plainview, Texas.

All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations

Outpatient Counseling Center-Lubbock were submitted by Allegiance Hospital under the

provider number of Allegiance Hospital.  Inspirations Outpatient Counseling Center-

Lubbock is located off-site from Allegiance Hospital and is not a department of

18

Allegiance Hospital.

69.  Defendant Allegiance Hospital is a hospital located in Lubbock, Texas.

70.  Defendant Inspirations Outpatient Counseling Center-Midland is owned and operated by defendant Allegiance Health Management and is located in Midland, Texas. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Midland were submitted by Allegiance Health Center of Midland under the provider number of Allegiance Health Center of Midland.  Inspirations Outpatient Counseling Center-Midland is located off-site from Allegiance Health Center of Midland and is not a department of Allegiance Health Center of Midland.

71.  Defendant Allegiance Health Center of Midland is a hospital located in Midland, Texas.

72.  Defendant Inspirations Outpatient Counseling Center-Plainview is owned and operated by defendant Allegiance Health Management and is located in Plainview, Texas. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Plainview were submitted by MHMR Covenant Hospital under the provider number of MHMR Covenant Hospital.  Inspirations Outpatient Counseling Center-Plainview is located off-site from MHMR Covenant Hospital and is not a department of MHMR Covenant Hospital.

73.  Defendant MHMR Covenant Hospital is a hospital located in Plainview, Texas.

74. Defendant Inspirations Outpatient Counseling Center-Tyler is owned and operated by defendant Allegiance Health Management and is located in Tyler, Texas. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Tyler were submitted by Allegiance Specialty Hospital of Kilgore under the provider number of Allegiance Specialty Hospital of Kilgore . Inspirations Outpatient Counseling Center-Tyler is located off-site from Allegiance Specialty Hospital of Kilgore and is not a department of Allegiance Specialty Hospital of Kilgore.

75. Defendant Inspirations Outpatient Counseling Center-Gainesville is owned and operated by defendant Allegiance Health Management and is located in Gainesville, Texas. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Gainesville were submitted by North Texas Medical Center under the provider number of North Texas Medical Center. Inspirations Outpatient Counseling Center-Gainesville is located off-site from North Texas Medical Center and is not a department of North Texas Medical Center.

76. Defendant North Texas Medical Center is a hospital located in Gainesville, Texas.

77. Defendant Inspirations Outpatient Counseling Center-Many is owned and operated by defendant Allegiance Health Management and is located in Many, Louisiana. All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations

Outpatient Counseling Center-Many were submitted by Sabine Medical Center under the provider number of Sabine Medical Center.  Inspirations Outpatient Counseling Center-Many is located off-site from Sabine Medical Center and is not a department of Sabine Medical Center.

78.  Defendant Sabine Medical Center is a hospital located in Many, Louisiana.

79. Defendant Inspirations Outpatient Counseling Center-Minden is owned and operated by defendant Allegiance Health Management and is located in Minden, Louisiana.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Minden were submitted by Minden Medical Center under the provider number of Minden Medical Center.  Inspirations Outpatient Counseling Center-Minden is located off-site from Minden Medical Center and is not a department of Minden Medical Center.

80.  Defendant Minden Medical Center is a hospital located in Minden, Louisiana.

81.  Defendant Inspirations Outpatient Counseling Center-West Monroe is owned and operated by defendant Allegiance Health Management and is located in West Monroe, Louisiana.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-West Monroe were submitted by Glenwood Regional Medical Center under the provider number of Glenwood Regional Medical Center.  Inspirations Outpatient Counseling Center-West Monroe is located off-site from Glenwood Regional Medical Center and is not a department of Glenwood

Regional Medical Center.

82.  Defendant Glenwood Regional Medical Center is a hospital located in West Monroe, Louisiana.

83.  Defendant Inspirations Outpatient Counseling Center-Springhill is owned and operated by defendant Allegiance Health Management and is located in Springhill, Louisiana.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Springhill were submitted by Springhill Medical Center under the provider number of Springhill Medical Center.  Inspirations Outpatient Counseling Center-Springhill is located off-site from Springhill Medical Center and is not a department of Springhill Medical Center.

84.  Defendant Springhill Medical Center is a hospital located in Springhill, Louisiana.

85.  Defendant Inspirations Outpatient Counseling Center-Ruston is owned and operated by defendant Allegiance Health Management and is located in Ruston, Louisiana.  All claims submitted to Medicare and/or Medicaid for "services" provided at Inspirations Outpatient Counseling Center-Ruston were submitted by HealthSouth Specialty Hospital of North Louisiana under the provider number of HealthSouth Specialty Hospital of North Louisiana.  Inspirations Outpatient Counseling Center-Ruston is located off-site from HealthSouth Specialty Hospital of North Louisiana and is not a department of HealthSouth Specialty Hospital of North Louisiana.

86. Defendant HealthSouth Specialty Hospital of North Louisiana is a hospital located in Ruston, Louisiana.

87. Defendant Health Management Associates, Inc. is a healthcare organization located in Naples, Florida. Health Management Associates, Inc. owns and/or manages Defendant hospitals Gilmore Memorial Regional Medical Center, Crossgates River Oaks Hospital, Northwest Mississippi Regional Medical Center, Natchez Community Hospital, Central Mississippi Medical Center, East Georgia Regional Medical Center, Davis Regional Medical Center, Lake Norman Regional Medical Center, Lehigh Regional Medical Center, Santa Rosa Medical Center, Medical Center of Southeastern Oklahoma, and Summit Medical Center.

88. Community Health Systems, Inc. is a healthcare organization located in Franklin, Tennessee. Community Health Systems, Inc. owns and/or manages Defendant hospital Wesley Medical Center.

89. Quorum Health Resources is a healthcare organization located in Brentwood, Tennessee. Quorum Health Resources owns and/or manages Defendant hospital Wesley Medical Center.

90. LifePoint Hospitals, Inc. is a healthcare organization located in Brentwood, Tennessee. LifePoint Hospitals, Inc. owns Defendant hospital Bolivar Medical Center.

## The Law

91. The False Claims Act (FCA) provides in pertinent part that:

> (a) Any person who (1) knowingly presents, or causes to be
> presented, to an officer or employee of the United States
> Government or a member of the Armed Forces of the United
> States a false or fraudulent claim for payment or approval; (2)
> knowingly makes, uses, or causes to be made or used, a false
> record or statement to get a false or fraudulent claim paid or
> approved by the Government; (3) conspires to defraud the
> Government by getting a false or fraudulent claim paid or
> approved by the Government; ... or (7) knowingly makes,
> uses, or causes to be made or used , a false record or
> statement to conceal, avoid, or decrease an obligation to pay
> or transmit money or property to the Government,
>
>            * * *
>
> is liable to the United States Government for a civil penalty of
> not less than $5,500 and not more than $11,000, plus 3 times
> the amount of damages which the Government sustains
> because of the act of that person....
> (b) For purposes of this section, the terms "knowing" and
> "knowingly" mean that a person, with respect to information
> (1) has actual knowledge of the information; (2) acts in
> deliberate ignorance of the truth or falsity of the information;
> or (3) acts in reckless disregard of the truth or falsity of the
> information, and no proof of specific intent is required.

31 U.S.C. § 3729.

92. The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), arose out of

congressional concern that financial inducements to those who can influence healthcare

decisions would result in goods and services being provided that are medically

unnecessary, of poor quality, or even harmful to a vulnerable patient population. To

protect the integrity of the program from these difficult-to-detect harms, Congress enacted

a *per se* prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care. First enacted in 1972, Congress strengthened the statute in 1977 and 1987 to ensure that kickbacks masquerading as legitimate transactions did not evade its reach. *See* Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and ©; 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Antiabuse Amendments, Pub. L. No. 95-142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93. As of January 1, 1997, the prohibition on kickbacks also applied to the Tricare program.

93. One of the purposes of the Anti-Kickback Statute is to ensure that health care providers compete for business based on the quality of care provided to patients and the efficiency with which such services are provided. When important health care decisions are influenced by improper inducements, competition among health care providers is drastically diminished. Those providers who abide by the law and refuse to provide improper remuneration in exchange for referrals lose business to unscrupulous providers who provide illegal inducements in order to get Medicare and Medicaid business. As a result of violations of the Anti-Kickback Statute, honest providers that provide high quality care to Medicare beneficiaries are deprived of the opportunity to compete fairly for business and consequently suffer economic loss.

94. The Anti-Kickback Statute prohibits any person or entity from offering or accepting remuneration to induce or reward any person from referring, recommending, or

arranging for federally-funded medical services, including services provided under the

Medicare and Medicaid programs:

> (b) Illegal remunerations

>> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind–
>> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

> shall be guilty of a felony and upon conviction thereof, shall be fined no more than $25,000 or imprisoned for not more than five years, or both.

>> (2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce such person –
>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal Health care program,

> shall be guilty of a felony and upon conviction thereof, shall be fined no more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a-7b(b).  Violation of the statute can also subject the perpetrator to

exclusion from participation in Federal health care programs and, effective August 6,

1997, civil monetary penalties of $50,000 per violation and three times the amount of remuneration paid.  42 U.S.C. § 1320(a)-7(b)(7) and 42 U.S.C. § 1320a-7(a)(7).

## Medicare and Outpatient Psychiatric Services

95. The United States, through the Department of Health and Human Services ("HHS") and its component agency, the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare Part A and Medicare Part B programs.  Generally, hospitals are reimbursed through the Medicare Part A program, and physicians are reimbursed through the Medicare Part B program.  The United States also pays for health care services through numerous other health care programs, including Medicaid and CHAMPUS.

96. Hospitals, physicians, and other health care providers who participate in the Medicare program, as well as other federal health care programs, are required to enter into contracts or "provider agreements" with HHS.  Under the terms of these provider agreements, hospitals, physicians, mental health professionals, and other participating health care providers certify that they will comply with all laws, regulations, and guidance concerning proper practices for Medicare providers.  Compliance with these provider agreements is a condition for participation in, and receipt of payments from, the Medicare program.

97. Each of the Hospital Defendants completed and submitted a CMS-855A form as part of its enrollment with the Medicare Program.  Through the submission of that

form, each of the Hospital Defendants certified to HHS that they would "abide by the

Medicare laws, regulations and program instructions that apply to this provider...." The

Hospital Defendants certified further that they "understand that payment of a claim by

Medicare is conditioned upon the claim and the underlying transaction complying with

such laws, regulations and program instructions (including, but not limited to, the Federal

anti-kickback statute and the Stark law), and on the provider's compliance with all

applicable conditions of participation in Medicare."

98.    One of the services paid for under the Medicare Part B program is outpatient

hospital psychiatric services.  These outpatient services provide active treatment to

individuals with mental disorders, and all such services must be rendered "incident to" a

physician's service and be reasonable and necessary for the diagnosis and treatment of the

patient's condition.  "Incident to" services are defined as those services furnished as an

integral, although incidental, part of a physician's personal professional services in the

course of diagnosis or treatment of an illness or injury.  In order to satisfy the "incident

to" requirement, physicians must provide direct supervision of all services billed to

Medicare and/or Medicaid.  If outpatient psychiatric services are rendered off-site from

the hospital, then the supervising physician must be in constant attendance at the off-site

location in order for the services to be eligible for Medicare coverage.

99.    Along with certain other outpatient psychiatric services, Medicare Part B pays

for group psychotherapy led by doctors or certain other licensed professionals allowed by

the state to conduct group therapy.  These services must be billed "incident to" the services of a physician, and a physician must provide direct supervision as described above.

100.  In order to be covered by Medicare, services must be reasonably expected to improve the patient's condition. Therapy comprised primarily of activity, social, or recreational therapy does not constitute medically necessary psychiatric services and therefore is not eligible for reimbursement under the Medicare Program.  Likewise, psychosocial programs or services which provide only a structured environment, socialization, and/or vocational rehabilitation are not covered by Medicare.

101.  Medicare does not cover the costs of meals or transportation provided to participants in outpatient psychiatric programs.

102.  Medicare and Medicaid providers are prohibited by law from offering or providing to a Medicare or Medicaid beneficiary any item of value which the provider knows or should know is likely to influence the beneficiary's selection of a particular provider, practitioner, or supplier of Medicare or Medicaid payable items or services. Offering valuable gifts to beneficiaries in order to influence their choice of a Medicare or Medicaid provider raises quality and cost concerns.  The use of "giveaways" to attract business also favors large providers with greater financial resources for such activities, disadvantaging smaller providers and businesses.  Any gifts, giveaways, or "freebies" exceeding $10 per item or $50 annually per patient constitute unlawful inducements.

103. Although group therapy is covered under Medicare Part B, Medicare does not pay for the full cost of group therapy. During the relevant time period, the percentage of Medicare-approved charges paid by the Medicare each year has fluctuated. In 2010, Medicare pays 55% of the Medicare-approved charge. The remaining amount of the Medicare-approved charge is paid by patients, either directly out of their pockets or through Medicaid or other supplemental insurance.

104. Many of the beneficiaries for whom the defendants billed group therapy services to Medicare also were covered under state Medicaid programs. The States of Arkansas, Louisiana, Texas, Oklahoma, Mississippi, Alabama, Georgia, Florida, and North Carolina maintain federally-approved Medicaid programs to reimburse health care charges made by physicians and other health care providers for the treatment of low-income beneficiaries. When a patient is covered by both Medicare and Medicaid, Medicare is considered the primary payor and Medicaid pays the portion of charges not paid by Medicare. Even though state Medicaid programs are state-run, the federal government funds a substantial percentage of each Medicaid payment. For the States of Arkansas, Louisiana, Texas, Oklahoma, Mississippi, Alabama, Georgia, Florida, and North Carolina, the percentage of each Medicaid payment paid by the federal government ranges from approximately 59% in Florida to approximately 76% in Mississippi.

### Defendants' Scheme

105. Defendants have engaged in a pattern of conduct that has resulted in the

submission of thousands of false claims to the United States through the Medicare and Medicaid programs.  As a result of this conduct, Defendants have received from the United States millions of dollars to which they were not entitled.

106.  Beginning in 2002, defendant Allegiance and its "Inspirations" subsidiaries have engaged in a scheme with the Hospital Defendants pursuant to which thousands of false claims knowingly have been submitted to Medicare and Medicaid for group therapy services which were not covered by Medicare or Medicaid because 1) they were not properly rendered "incident to" a physician's services; 2) the "services" provided were comprised primarily of activity, social, or recreational therapy and therefore were not covered under Medicare as reimbursable outpatient group psychotherapy; 3) Defendants provided excessive gifts to beneficiaries in order to insure their continued participation in Defendants' bogus therapy program; and 4) the financial relationship between Allegiance and the Inspirations Defendants on the one side and the Hospital Defendants on the other violated the federal anti-kickback statute.  All claims submitted to Medicare and/or Medicaid as a result of this conduct were false claims under the federal False Claims Act and would not have been paid by Medicare or Medicaid had personnel responsible for the payment of such claims known of the scheme described herein.

**Failure to Provide Group Therapy "Incident To" a Physician's Services**

107.  In furtherance of the scheme described herein, defendant Allegiance and the Hospital Defendants entered into agreements pursuant to which Allegiance agreed to use

space owned or controlled by the hospitals to provide bogus therapy services which the

hospitals would bill to Medicare Part B as outpatient group psychotherapy.  In exchange

for the agreement of the Hospital Defendants to provide space for the bogus services,

market Allegiance's outpatient therapy services under the name "Inspirations", refer its

patients to the "Inspirations" program, and submit claims to Medicare Part B under the

hospitals' Medicare numbers using codes provided by Allegiance and its Inspirations

subsidiaries, Allegiance agreed to allow the hospitals to keep 20% of all amounts paid to

Allegiance by Medicare (as the primary payor), Medicaid (as a supplemental payor),

and/or other private insurance (also as a supplemental payor) for the bogus therapy

services.

108.  All such claims were submitted to Medicare as if the Hospital Defendants

themselves had provided legitimate outpatient group psychotherapy services, when in fact

all staff involved in the bogus therapy program, including physicians, were employed by

Allegiance and/or its Inspirations subsidiaries.

109.  Despite the fact that the bogus therapy services provided by Allegiance and

its Inspirations subsidiaries were billed as outpatient "hospital services," the offices in

which the Inspirations clinics operated were not located within the defendant hospitals,

were not departments of the defendant hospitals, and in many instances were not even

located in the same vicinity as the defendant hospitals.  The "services" which are the

subject of this action were rendered in buildings off-site from the defendant hospitals.

110. In order to be reimbursable under Medicare Part B, outpatient group psychotherapy services must be rendered "incident to" the services of a physician. In order to qualify as reimbursable "incident to" services, group therapy must be directly supervised by a physician. When outpatient psychiatric services are rendered off-site from a hospital, as was the case for all "services" rendered at the defendant Inspirations clinics, the supervising physician must be in constant attendance throughout the period of therapy at the off-site location.

111. Pursuant to the Defendants' scheme, and with the knowledge of Allegiance, its Inspirations subsidiaries, the Hospital Defendants, and defendants Bordelon, Merck, and Cameron, there was not constant physician presence at any of the defendant Inspirations clinics. When Relator presented his concerns regarding the fact that the physician paid by Allegiance to "supervise" patients at the Inspirations facility affiliated with defendant Wesley Medical Center was present at the clinic only a few hours every week or two, Allegiance Regional Director Cindy Brazier confirmed that there was no constant physician presence at any of the defendant Inspirations clinics and commented that "we could never afford that."

112. The Hospital Defendants, as the entities submitting claims to Medicare Part B under their Medicare provider numbers, were responsible for insuring proper physician supervision at each of the defendant Inspirations clinics, but they failed to do so. At

Wesley Medical Center, for example, hospital personnel were told expressly by Relator that the "supervising" psychiatrist was present at the Hattiesburg, Mississippi Inspirations clinic only a few hours ever week or two.  Despite this knowledge, Wesley Medical Center continued to submit claims to Medicare for outpatient group therapy.

113.  In order to maximize their profits, Defendants refused to spend the money necessary to provide constant physician presence at the off-site defendant Inspirations clinics where group therapy services were allegedly being provided.

114.  As a result of the conduct set forth herein, all claims submitted to Medicare Part B (as primary payor) and state Medicaid programs (as secondary payor) for group therapy services provided at the defendant Inspirations clinics when a physician was not physically present at the defendant Inspirations clinics were false claims under the federal False Claims Act.  All such claims represented that services had been provided by a physician or "incident to" a physician's services, and all such representations were false. Had the Medicare contractors responsible for processing claims for outpatient group therapy known that the services were not provided incident to the care of a physician, those claims would not have been paid.

115.  All such claims to Medicare described in the preceding paragraph were submitted to Medicare by the Hospital Defendants on a UB-92 form (also known as a HCFA-1450 form) and include an implied certification that the services billed to Medicare were properly reimbursable under applicable Medicare laws and regulations.

Truthful certification is a condition of payment from Medicare, and the claims at issue would not have been paid absent these certifications. Because use by each Hospital Defendant of its explicit statements on its earlier CMS-855A enrollment form was an integral part of each presentation of each such claim for payment, each such claim used a statement that the underlying transaction complied with Medicare laws and regulations, and that such compliance was a condition met by any such claim for payment, and therefore each such claim for that additional reason used a false statement in order get each such false claim paid. Because the group therapy services described herein were not properly rendered "incident to" a physician's services, each and every claim described in the preceding paragraph submitted via a UB-92 form was a false claim in violation of the federal False Claims Act.

## The "Therapy" Provided by Defendants Was Not Covered by Medicare

116. While Medicare Part B does cover legitimate outpatient group psychotherapy, Medicare expressly excludes from coverage any course of therapy comprised primarily of activity, social, or recreational therapy. Likewise, Medicare expressly excludes from coverage psychosocial programs or services which provide only a structured environment, socialization, and/or vocational rehabilitation.

117. Beginning in 2002, Defendants have engaged in a scheme pursuant to which Medicare and/or Medicaid beneficiaries are induced to visit the defendant Inspirations clinics on a daily basis. At the Inspirations clinics, these beneficiaries watch television

and play games like bingo and "pass the animal".  While at the Inspirations clinics, they are provided with a free lunch and awarded "prizes" for "winning" games led by the Inspirations staff.  These group activities conducted at the defendant clinics are not covered by Medicare.

118.  Despite the fact that the group activities conducted at the defendant Inspirations clinics do not constitute legitimate outpatient group psychotherapy and are not covered by Medicare, Defendants knowingly presented, or cause to presented, to Medicare thousand of false claims to Medicare (and ultimately Medicaid as a secondary payor) for outpatient group therapy.  As a result of this scheme, Defendants have received from Medicare and Medicaid millions of dollars to which they are not entitled under the law.

119.  As a result of the conduct set forth herein, all claims submitted to Medicare Part B (as primary payor) and state Medicaid programs (as secondary payor) for group therapy services provided at the defendant Inspirations clinics are false claims under the federal False Claims Act because the group activities conducted at the defendant clinics are not covered by Medicare.  Defendants represented to Medicare on all such claims that therapy of the type covered by Medicare was provided, but all of those representations were false.  Had the Medicare contractors responsible for processing claims for outpatient group therapy known that the services were not of the type covered by Medicare, those claims would not have been paid.

36

120.  All such claims to Medicare described in the preceding paragraph were submitted to Medicare by the Hospital Defendants on a UB-92 form (also known as a HCFA-1450 form) and include an implied certification that the services billed to Medicare were properly reimbursable under applicable Medicare laws and regulations. Truthful certification is a condition of payment from Medicare, and the claims at issue would not have been paid absent these certifications.  Because use by each Hospital Defendant of its explicit statements on its earlier CMS-855A enrollment form was an integral part of each presentation of each such claim for payment, each such claim used a statement that the underlying transaction complied with Medicare laws and regulations, and that such compliance was a condition met by any such claim for payment, and therefore each such claim for that additional reason used a false statement in order get each such false claim paid.  Because the group activities conducted at the defendant clinics did not constitute covered outpatient group psychotherapy, each and every claim described in the preceding paragraph submitted via a UB-92 form was a false claim in violation of the federal False Claims Act.

**Illegal Inducements to Patients**

121.  In order to maximize their reimbursement from Medicare and Medicaid, Defendants Allegiance, Bordelon, Merck, Cameron and the Inspirations Defendants put intense pressure on the Program Directors and other staff members at each Inspirations clinic to convince Medicare and/or Medicaid beneficiaries to participate in their bogus

therapy program.  When Relator asked Allegiance Regional Director Cindy Brazier where

to find participants, she instructed him to "go to the hood!"  Relator and other Inspirations

Program Directors were instructed to do everything they could to increase the number of

participants in the bogus group therapy.

122.  In order to induce Medicare and/or Medicaid beneficiaries to participate in

the bogus group therapy scheme, Defendants provide beneficiaries with remuneration in

the form of free transportation, meals, and prizes.  For each patient, the value of these

meals and prizes is substantially more than $50 per year.

123.  When providing these inducements to Medicare and/or Medicaid

beneficiaries, Defendants knew or should have known that the inducements were likely to

influence the beneficiaries' decisions to participate in Defendants' bogus group therapy

scheme.

124.  Many of the beneficiaries who participated in the group activities at the

Inspirations clinics were provided by Defendants with free transportation to and from the

Inspirations facilities.  All beneficiaries who participated in the group activities at the

Inspirations clinics received a free lunch each and every day they were in attendance.

Because part of Defendants' scheme was to insure that all beneficiaries participated in

group activities three hours per day five days per week for many months, the participating

beneficiaries received at least twenty free lunches per month.  The value of these free

meals exceeded $100 per month per beneficiary.

125.  The meals served to participants in the bogus group therapy were provided by the hospitals affiliated with each Inspirations clinic.  The Hospital Defendants provided these meals at no charge to the beneficiaries because hospital management knew that the value of each hospital's 20% cut of the false therapy billings was worth far more than the cost of the free lunches.  The Hospital Defendants knowingly agreed and conspired with defendant Allegiance and the Inspirations Defendants to provide the free meals as an intended inducement for continued participation by each beneficiary in the bogus group therapy.

126.  In addition, the Program Director at each Inspirations clinic was instructed to buy thousands of dollars worth of toiletries and other personal items to be given away as prizes during bingo, "pass the animal," and other games.  This directive came from Allegiance management in Shreveport, and Program Directors were provided with company credit cards to be used when purchasing these "prizes."

127.  The prizes given away during the extensive game playing at the Inspirations clinics included shampoo, detergent, deodorant, food, and other valuable household items.  Beneficiaries would instruct Inspirations Program Directors what to buy for them as "prizes," and the Program Directors would make those specific purchases and provide the requested items to the beneficiaries who asked for them.  As part of the inducement scheme, Inspirations made certain that each beneficiary was provided a "prize" on a regular basis.  The value of these "prizes" exceeded $100 per beneficiary per month, and

Defendants knew or should have known that these inducements were likely to influence the beneficiaries' decision to participate in Defendants' bogus group therapy scheme.

128. As a result of the conduct set forth herein, all claims submitted to Medicare Part B (as primary payor) and state Medicaid programs (as secondary payor) for group therapy services provided at the defendant Inspirations clinics for group therapy are false claims under the federal False Claims Act because the beneficiaries who received those services were illegally induced by Defendants to attend the bogus therapy session. Each such claim represented that the services provided were reimbursable under the Medicare program, but each such representation was false because the excessive inducements described herein rendered the services non-reimbursable. Had the Medicare contractors responsible for processing claims for outpatient group therapy known that the services resulted from improper inducements, those claims would not have been paid.

129. All such claims to Medicare described in the preceding paragraph were submitted to Medicare by the Hospital Defendants on a UB-92 form (also known as a HCFA-1450 form) and include an implied certification that the services billed to Medicare were properly reimbursable under applicable Medicare laws and regulations. Truthful certification is a condition of payment from Medicare, and the claims at issue would not have been paid absent these certifications. Because use by each Hospital Defendant of its explicit statements on its earlier CMS-855A enrollment form was an integral part of each presentation of each such claim for payment, each such claim used a

statement that the underlying transaction complied with Medicare laws and regulations, and that such compliance was a condition met by any such claim for payment, and therefore each such claim for that additional reason used a false statement in order get each such false claim paid.  Because the participation of all of the beneficiaries who participated in Defendants' bogus group therapy was illegally induced by Defendants, each and every claim described in the preceding paragraph submitted via a UB-92 form was a false claim in violation of the federal False Claims Act.

### Kickbacks from Allegiance and the Clinics to the Hospitals

130.  Defendants Allegiance, Bordelon, Merck, and Cameron devised a scheme whereby they entered into agreements with the Hospital Defendants pursuant to which Allegiance and the Inspirations Defendants provided all of the bogus therapy described herein, employed all physicians and staff who worked at the Inspirations clinics, provided all billing information necessary for the Hospital Defendants to bill Medicare, recruited all Medicare beneficiaries who participated in the bogus therapy at the Inspirations clinics, and provided free transportation to and from the Allegiance facilities.  Allegiance, Bordelon, Merck, Cameron and the Inspirations Defendants agreed further that the Hospital Defendants would retain 20% of all amounts collected from Medicare, Medicaid, and other third-party payors despite the fact that the Hospital Defendants provided no services whatsoever, did not employ anyone involved in the services provided at the Inspirations Clinics, and assumed no financial risk.

41

131.  In exchange for this 20% kickback, the Hospital Defendants agreed to, and did, refer hospital patients to the Inspirations clinics for bogus outpatient group therapy. The Hospital Defendants did so knowing that they would receive 20% of all proceeds generated from each referral.  The Hospital Defendants knew, or should have known, that the activities at the Inspirations clinics were not covered by Medicare or Medicaid.

132.  Allegiance, Bordelon, Merck, Cameron and the Inspirations Defendants agreed to pay the 20% kickback to the Hospital Defendants because their 80% share of the payments received from Medicare and/or Medicaid for services billed through a hospital as hospital-based outpatient group therapy far exceeded the amount they would have received had such services not been billed through a hospital.

133.  The Hospital Defendants agreed to this scheme because they got something for nothing.

134.  This arrangement violates the federal anti-kickback statute.

135.  All of the claims resulting from remuneration to the Hospital Defendants in exchange for the use of their Medicare numbers and in conjunction with referrals to Allegiance and/or the Inspirations Defendants were tainted by this scheme and each such claim was a legally false claim within the meaning of 31 U.S.C. § 3729 et seq.  If the Medicare contractors responsible for handling these claims had known of the kickback scheme described above, or the falsity of the certification statements in the enrollment documents of the Hospital Defendants, no such claims would have been paid.  Because

use by each Hospital Defendant of its explicit statements on its earlier CMS-855A

enrollment form was an integral part of each presentation of each such claim for payment,

each such claim used a statement that the underlying transaction complied with Medicare

laws and regulations, and that such compliance was a condition met by any such claim for

payment, and therefore each such claim for that additional reason used a false statement

in order get each such false claim paid.

## COUNT I

Claim By and on Behalf of the United States under the False Claims Act
(Presenting False Claims)

136.  Plaintiff realleges and incorporates by reference paragraphs 1 through 135 as

though fully set forth herein.

137.  This is a claim under the False Claims Act,  31 U.S.C. §§ 3729-33, as

amended.

138.  The Plaintiff/Relator, Ryan Ladner, has standing to maintain this action by

virtue of 31 U.S.C. §3730(b).

139.  By virtue of the acts described herein, Defendants knowingly presented false

or fraudulent claims for payment, or knowingly caused false or fraudulent claims for

payment to be presented, to officials of the United States Government in violation of 31

U.S.C. § 3729(a)(1), as amended.

140.  By virtue of the false claims presented or caused to be presented by

Defendants, the United States has suffered actual damages and is entitled to recover three

times the amount by which it is damaged, plus civil money penalties of not less than

$5,500 and not more than $11,000 for each of the false claims presented or caused to be

presented, and other monetary relief as appropriate.

## COUNT II

Claim By and on Behalf of the United States under the False Claims Act (False Records or Statements)

141.  Plaintiff realleges and incorporates by reference paragraphs 1 through 135 as

though fully set forth herein.

142.  This is a claim on behalf of the United States under the False Claims Act,

31 U.S.C. §§ 3729-33, as amended.

143.  The Plaintiff/Relator, Ryan Ladner, has standing to maintain this action by

virtue of 31 U.S.C. §3730(b).

144.  By virtue of the acts described above and Defendants' use of, or activities

causing to be used, false records and statements to get false and fraudulent claims paid

and approved by the Government, Defendants caused to be made or used false records or

statements to get false or fraudulent claims paid or approved by an agency of the United

States Government, in violation of 31 U.S.C. § 3729(a)(2).

145.  By virtue of, and as a result of, the false records and statements used to get

false claims paid by the Government, the United States has suffered actual damages and is

entitled to recover three times the amount by which it is damaged, plus civil money

penalties of not less than $5,500 and not more than $11,000 for each of the false claims

presented or caused to be presented, and other monetary relief as appropriate.

## COUNT III

Claim By and on Behalf of the United States under the False Claims Act
(Conspiracy to Submit False Claims)

146.  This is a claim under the False Claims Act,  31 U.S.C. §§ 3729-33, as amended.

147.  Plaintiff realleges and incorporates by reference paragraphs 1 through 135 as though fully set forth herein.

148.  By reason of the foregoing with respect to Defendants' fraudulent scheme, Defendants conspired together to defraud the government in order to get false or fraudulent claims paid by Medicare, in violation of 31 U.S.C. § 3729(a)(3), as amended. In furtherance of the conspiracy, Defendants acted to affect the objects of the conspiracy alleged herein.

149.  By virtue of the false claims presented or caused to be presented by Defendants pursuant to this conspiracy, the United States has suffered actual damages and is entitled to recover three times the amount by which it is damaged, plus civil money penalties of not less than $5,500 and not more than $11,000 for each of the false claims presented or caused to be presented, and other monetary relief as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States:

1.      On Counts I - III, under the False Claims Act, against Defendants for treble the amount of the United States' actual damages (including investigative costs), plus civil penalties as are allowable by law for each false claim or record and for all costs of this civil action;

2.      For all costs of this civil action; and

3.      For such other and further relief as the Court deems just and equitable.

WHEREFORE, relator Ryan Ladner demands and prays that judgment be entered in his favor:

1.      On Counts I - III, under the False Claims Act, for a percentage of all civil penalties and damages obtained from Defendants pursuant to 31 U.S.C. § 3730, reasonable attorney's fees, and all costs incurred against Defendants; and

2.      Such other relief as the Court deems just and proper.

Respectfully submitted,

_____

J. Cliff Johnson II (Mississippi Bar #9383)

ATTORNEY FOR RELATOR RYAN LADNER

Pigott Reeves Johnson, P.A.
775 N. Congress Street
Post Office Box 22725
Jackson, Mississippi 39225-2725
Telephone:  (601) 354-2121
Facsimile: (601) 354-7854